The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR15-336JCC |
|---|---|
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| PAUL G. HURLEY, | |
| Defendant. | |

In September 2015, defendant Paul Hurley, in direct contravention of his oath of office, abused his official duties as a revenue agent of the Internal Revenue Service in order to obtain $20,000 in cash for himself. As an IRS revenue agent, the defendant played a critical role in the fair assessment and collection of taxes. The defendant's conduct in this case – corruptly receiving a $20,000 bribe in exchange for reducing a taxpayer's lawful tax obligations – is an affront to the United States, the IRS, and all law-abiding tax payers who rely on the IRS being fair and just in its enforcement of the tax laws of the United States. Given the seriousness of the defendant's corrupt conduct, the egregious manner in which he committed it, and the aggravating factors in the defendant's history and characteristics, the United States respectfully requests that the

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Court sentence the defendant to a term of imprisonment of 84 months, as it is sufficient, but not greater than necessary, to meet the goals of sentencing.

## I. PROCEDURAL HISTORY

On September 21, 2015, federal agents with the Federal Bureau of Investigation ("FBI") and Treasury Inspector General for Tax Administration ("TIGTA") arrested defendant Paul Hurley after he received $15,000 bribe payment from a taxpayer. Presentence Investigation Report ("PSR") ¶ 3. On October 14, 2015, a federal Grand Jury returned a three-count Indictment charging Hurley. Count One charged Hurley with Soliciting and Agreeing to Receive a Bribe by a Public Official, and Counts 2 and 3 charged Hurley with Receiving a Bribe by a Public Official, all in violation of Title 18, United States Code, Section 201(b)(2). PSR ¶ 1.

The defendant's trial began on February 9, 2016. On February 12, the jury acquitted the defendant on Count 1 (Soliciting and Agreeing to Receive a Bribe by a Public Official). However, the jury convicted the defendant of the lesser included offense of Receiving an Illegal Gratuity By a Public Official. In addition, the jury convicted the defendant on Counts 2 and 3 (Receiving a Bribe by a Public Official). Defendant Hurley's sentencing is scheduled at 10:00 a.m. on May 13, 2016.

## II. FACTS

On June 22, 2009, defendant Hurley began working at the Internal Revenue Service ("IRS") as a revenue agent. Defendant Hurley came to the IRS with unusually advanced credentials for a revenue agent including a law degree from Golden Gate University School of Law and an LLM in tax law from the University of Washington School of Law. As an IRS revenue agent, defendant Hurley was assigned to conduct IRS tax audits on IRS tax returns as part of their official duties. As part of the audit process, defendant Hurley had an obligation to examine taxpayers' tax filings to determine whether the taxpayers correctly reported and paid their tax liability to the IRS.

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Throughout his employment as an IRS revenue agent, defendant Hurley received ethics training explaining the broad prohibition against soliciting or accepting any gift or other item of monetary value from any person seeking official action from the IRS or whose interests may be substantially affected by the performance or nonperformance of defendant Hurley's duties.

In July 2015, defendant Hurley began auditing Have a Heart Compassion Care, Inc. ("Have a Heart"), a medical marijuana dispensary. On July 1, 2015, just days before he began his examination of Have a Heart, defendant Hurley's second-level supervisor, Diane Wittman, gave defendant Hurley a letter notifying him that the IRS was proposing to remove him from the IRS or otherwise discipline him. This proposed removal or discipline resulted from defendant Hurley's unauthorized access of taxpayer data on three occasions in 2014 and his lack of candor in the investigation of his unauthorized access. On or about July 20, 2015, shortly after he began his examination of Have a Heart, defendant Hurley received his annual ethics training, including a reiteration of the prohibition of gifts from outside sources and the prohibition against seeking certain outside employment.

On or about July 6, 2015, defendant Hurley mailed an official notice to Have a Heart to the attention of Ryan Kunkel. The July 6th notice informed Mr. Kunkel that Have a Heart's federal tax return for the year ending December 31, 2013, had been selected for examination. According to his internal IRS Activity Record, around the time defendant Hurley mailed the notice to Have a Heart, defendant Hurley conducted research concerning tax issues related to medical marijuana businesses, including the applicability of Internal Revenue Code ("IRC") Section 280E. Section 280E of the IRC prohibits a business trafficking in illegal substances from deducting normal operating expenses when calculating its income tax.

Over the next few months, defendant Hurley met with Mr. Kunkel at Have a Heart's location in North Seattle to conduct the audit. During the course of the

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

examination, defendant Hurley expanded the audit to include the 2014 tax year. According to Mr. Kunkel, Have a Heart's cost of goods sold deduction was a focus of the audit. On September 11, 2015, defendant Hurley provided Mr. Kunkel with the results of the examination on an IRS Form 4549. Both defendant Hurley and Mr. Kunkel signed the Form 4549, which included a statement that the agreement to pay additional taxes was subject to approval by an IRS supervisor.

Shortly after they signed the Form 4549, Mr. Kunkel asked defendant Hurley if he could ask a question "off the record." After defendant Hurley agreed, Mr. Kunkel then asked him a tax question about an unrelated business. Immediately thereafter, defendant Hurley asked Mr. Kunkel if he could ask a question "off the record."

According to Mr. Kunkel, defendant Hurley said that he had saved Mr. Kunkel over $1 million in the audit. According to Mr. Kunkel, defendant Hurley had previously talked about his student loan debt and being unhappy at the IRS. Mr. Kunkel suspected defendant Hurley was proposing that Mr. Kunkel make a personal payment to defendant Hurley. Mr. Kunkel rubbed his fingers together and looked at defendant Hurley to see if that was his intention. Defendant Hurley responded by stating "20," which Mr. Kunkel understood to mean $20,000.

At that point, Mr. Kunkel asked defendant Hurley how he wanted the payment, and he responded that he wanted Mr. Kunkel to pay off his student loans in small amounts over time. Mr. Kunkel told defendant Hurley that he did not think that was a good idea. Defendant Hurley then said he wanted cash. According to Mr. Kunkel, he was worried that defendant Hurley would not present the signed Form 4549 unless he agreed to make the payment. As a result, Mr. Kunkel agreed to pay defendant Hurley the $20,000 and suggested meeting on September 16, 2015, to make the payment. Defendant Hurley agreed, and told Mr. Kunkel not to tell anyone, not even his business partner.

Contrary to the defendant's instruction, Mr. Kunkel, through his attorney, reported Mr. Kunkel's interactions with defendant Hurley to law enforcement. Subsequently, in

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

two meetings recorded by law enforcement, on September 15 and 21, 2015, defendant Hurley met with Mr. Kunkel and received a total of $15,000 in cash. During the meeting on September 21st, defendant Hurley and Mr. Kunkel discussed a friend of Mr. Kunkel who was purportedly going to have an audit of his marijuana business. The defendant told Mr. Kunkel, "It's not going to be as kind for him" and "He's going to get railed, dude." In response, Mr. Kunkel stated, in part, "Hopefully, he's as fortunate to get a guy like you and we'll see" to which defendant Hurley responded, "Get a guy like me? They don't exist. Guys like me don't exist." In addition, shortly after defendant Hurley reached under the passenger seat to obtain the $15,000 in cash, Mr. Kunkel asked defendant Hurley, "So we're good. So nothing weird pops up or if it does, can I get ahold of you?" Defendant Hurley responded by directing Mr. Kunkel to "write [him] snail mail" at defendant Hurley's home address. Later, Mr. Kunkel again asked, "You think we're going to be okay, though?" and defendant Hurley responded, "I'm 99.99 percent sure we're good. I mean there's --- there's really no fucking chance of it. It's already been closed up by a manager. Got closed out, like, that same day." Agents arrested defendant Hurley as he tried to leave the meeting with Mr. Kunkel.

The defendant's trial began on February 9, 2016. During his trial, defendant Hurley testified in his own defense and spun an incredible tale that the $20,000 payment was not a bribe, but rather a pre-payment for future work as the main accountant for a number of marijuana businesses. Not surprisingly, the jury rejected defendant Hurley's false story, and convicted him of receiving a $20,000 bribe in exchange for being influenced in the performance of an official act, the audit of the taxpayer.

### III. SENTENCING GUIDELINE RANGE

In the PSR, the Probation Office applied the following sentencing guidelines provisions:

(1) A base offense level of 14 pursuant to U.S.S.G. § 2C1.1(a)(1);

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

|     |     |                                                                                          |
| --- | --- | ---------------------------------------------------------------------------------------- |
| 1   | (2) | A 14-level upward adjustment, pursuant to U.S.S.G. § 2C1.1(b)(2) and                     |
| 2   |     | § 2B1.1(b)(1)(H) because the benefit received or to be received in return to             |
| 3   |     | the payment or the loss to the government from the offense was between                  |
| 4   |     | $550,000 and $1,500,000;                                                                 |
| 5   | (3) | A 4-level increase, pursuant to U.S.S.G. § 2C1.1(b)(3) because the                       |
| 6   |     | defendant was a public official in a sensitive position; and                             |
| 7   | (4) | A 2-level increase pursuant to U.S.S.G. § 3C1.1 because the defendant                    |
| 8   |     | willfully obstructed or impeded, or attempted to obstruct or impede, the                 |
| 9   |     | administration of justice with respect to the prosecution of the offense by              |
| 10  |     | committing perjury at trial.                                                             |

Based upon a total offense level of 34 and a criminal history category of I, the advisory guideline range as calculated by the Probation Office is 151 to 188 months. The defendant has objected to the application of these enhancements. As set forth below, the United States believes that the Probation Office's calculation of the advisory Guidelines range is correct, and urges the Court to adopt it.

**A.  A 14-level Enhancement is Appropriate Because the Benefit to Have a Heart and the Loss to the Government was at Least $550,000**

Under U.S.S.G. §2C1.1(b)(2), the offense level should be increased

> If the value of the payment, the benefit received or to be received in return for the payment… or the loss to the government from the offense, whichever is greatest, exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud).

U.S.S.G. §2C1.1(b)(2). Thus, under U.S.S.G. § 2C1.1(b)(2), the greater of: (1) the value of the bribe payment; or (2) the benefit to be received by the bribe payor or the loss to the United States is used to determine the enhancement under table in Section 2B1.1. Under Section 2B1.1(1)(H), a 14-level enhancement is appropriate if the loss amount was greater than $550,000. In *United States v. Gillman*, the Ninth Circuit analyzed the deterrence policy underlying U.S.S.G. §2C1.1(B)(2) and explained, "It plainly envisions

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | that the punishment should fit the crime, and the measure of the crime is the greater of the
2 | benefit to the payer or the recipient." *United States v. Gillam*, 167 F.3d 1273, 1279 (9th
3 | Cir. 1999).
4 |     A 14-level increase to the offense level is warranted in this case because the
5 | evidence demonstrates that the $550,000 threshold amount was easily exceeded. First, it
6 | is undisputed that, during the audit, defendant Hurley allowed Have a Heart to take over
7 | $3 million of deductions for cost of goods sold which had the effect of reducing Have a
8 | Heart's tax liability by approximately $1 million. Second, according to a preliminary
9 | analysis conducted by the IRS which was not introduced at trial, defendant Hurley saved
10 | Mr. Kunkel approximately $920,000 by not auditing other marijuana business that were
11 | related to Have a Heart. *See* Exhibit 2, *Report by Agent Suet Chen concerning Have a*
12 | *Heart's Related Businesses*. Finally, and most critically, both defendant Hurley and Mr.
13 | Kunkel testified that they discussed defendant Hurley saving Mr. Kunkel huge amounts
14 | of money. Mr. Kunkel testified that in the September 11th discussion concerning a
15 | possible bribe payment, the defendant told Mr. Kunkel that he had just saved him
16 | $1 million. During his testimony, defendant Hurley testified that, in the same meeting, he
17 | told Mr. Kunkel, "Hey, I'm living paycheck to paycheck, and I'll save you millions."
18 | Exh. 1, page 32, lines 14-5. As discussed more fully below, the jury rejected Hurley's
19 | testimony that his mention of millions of dollars of savings related to future work. Thus,
20 | there is ample evidence that defendant Hurley saved Have a Heart and Mr. Kunkel at
21 | least $1 million during the audit, exposing the United States to at least $1 million in tax
22 | loss.[1]

---

[1] At the very least, the loss amount in this case should be the tax liability reflected in the Form 4549 audit form that defendant Hurley prepared. Exhibit 4 (Government Trial Exh. 67). In this form, defendant Hurley indicated that Have a Heart owed an additional $122,277.20 in taxes for 2013 and $169,898.21 for 2014, resulting in a total tax bill of $292,175.41. As Defendant Hurley explained during the recorded meeting on September 21, 2015, Have a Heart would not have to pay this amount because Defendant Hurley had

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is the intended loss that defendant Hurley and Mr. Kunkel reasonably anticipated causing that is at issue here. Intended loss is the "pecuniary harm that was intended to result from the offense," which may include "harm that would have been impossible or unlikely to occur. U.S.S.G. §2B1.1, comment (n. 3(A)(ii), *see also*, §2C1.1, comment (n. 3). In a case involving bribery to cancel tax liability, the "benefit received" is "equal to the tax liability [the defendant] sought to eliminate." *United States v. Ziglin*, 964 F.2d 756, 758 (8th Cir. 1992) (footnote omitted). It makes no difference that the IRS might never have recovered the taxes that the taxpayer sought to cancel through the bribe. *United States v. Thickstun*, 110 F.3d 1394, 1400 (9th Cir. 1997). Here, defendant Hurley claimed to have saved the taxpayer over $1 million, which is the amount of tax liability defendant Hurley sought to eliminate in exchange for a bribe. Therefore, the intended loss to the United States was over $1 million, and defendant Hurley's offense level should be increased by 14 levels.

Like the facts in this case, in *United States v. Ruffin*, an IRS officer accepted a $600 bribe in return for agreeing to eliminate $10,295 in tax liability. 779 F. Supp. 385, 386 (E.D.Va 1991). The district court in *Ruffin* concluded the Guidelines supported using the $10,295 amount to compute the offense level enhancement. *Id.* Similarly, in *United States v. Coombs*, the court used the potential tax loss to the United States instead of the amount of the amount of a bribe payment that was made by a taxpayer to an IRS revenue agent. *See* Exhibit 3, *United States v. Coombs Sentencing Transcript*, pages 3-5. Here, defendant Hurley accepted a $20,000 bribe in return for eliminating at least $1 million of the taxpayer's liability. Therefore, the $1 million amount should be used to when determining whether the $550,000 threshold in Section 2B1.1(1)(H) has been surpassed.

---

told his management that the company was going out of business, despite the fact that defendant Hurley purportedly wanted to work for the business in the future. Under U.S.S.G. § 2B1.1(b)(1)(G), this intended loss amount would result in a 12-level enhancement.

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## B. Defendant Hurley was a Public Official in a Sensitive Position

A four-level enhancement under U.S.S.G. § 2C1.1 is warranted because defendant Hurley was a public official in a sensitive position. U.S.S.G. §2C1.1(b)(3) provides for a four-level sentencing enhancement when a bribe offense involves an "elected public official or any public official in a high-level decision-making or sensitive position." U.S.S.G. §2C1.1(b)(3). At trial, the jury determined that defendant Hurley was a "public official" under 18 U.S.C. § 201(a)(1). Therefore, defendant Hurley is a public official as defined in the guideline.

Defendant Hurley was also in a "sensitive" position. A "'[h]igh-level decision-making or sensitive position' means a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." U.S.S.G. §2C1.1, Application Note 4(A).

At least three courts have found that IRS revenue agents are public officials in sensitive positions for purposes of the guideline. In *United States v. Darr*, the district court held that, although the IRS agent was not a high-level official, she was a public official in a sensitive position due to the agent's ability to make binding decisions for the government, to work without supervision, and to take sworn testimony, and to issue summons. *United States v. Darr*, 2008 WL 515450 at *1 (C.D. Ill. Feb. 22, 2008) (unpublished). *See also, United States v. Cardenas*, 135 Fed. App'x. 688, 690 (5th Cir. 2005) (unpublished) (affirming sensitive position when tax preparer bribed IRS revenue agent who did not have a supervisory position but did have decision-making authority in collecting substantial sums of tax revenue). Finally, the court in *Coombs* applied the enhancement to an IRS revenue agent who solicited and received a bribe despite the fact that the agent was still in his probationary period and subject to close supervision. Exhibit 3, pages 3-5. In contrast to the *Coombs* defendant, defendant Hurley had been a revenue agent for approximately six years when he received the bribe money. Defendant

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Hurley operated with little supervision and had the authority to make decisions for the government in collecting large sums of tax revenue through audits. Accordingly, defendant Hurley was in a "sensitive" position when he received the bribe and the application of the four-level enhancement is warranted.

**C.      Defendant Hurley Obstructed Justice by Committing Perjury at Trial**

The United States believes a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 is warranted since the defendant committed perjury during the trial. U.S.S.G. § 3C1.1 provides that the offense level should be increased by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offence of conviction, and (2) the obstructive conduct related to … the defendant's offense of conviction …" U.S.S.G. § 3C1.1. Application Note 4 of U.S.S.G. § 3C1.1 gives examples of conduct that to which the adjustment applies, including "committing … perjury." Application Note 4(B).

During the trial, defendant Hurley perjured himself on a number of occasions while testifying on his own behalf. Most critically, defendant Hurley denied that he accepted money in order to influence his audit. *See* Exhibit 1, Transcript of Paul Hurley Trial Testimony, page 37, lines 22-24. The jury's verdict directly contradicts this testimony. By finding the defendant guilty of Receiving a Bribe in Counts 2 and 3, the jury found beyond a reasonable doubt that defendant Hurley "acted corruptly, that is intending to be influenced in the performance of an official act and to do or omit to do an act in violation of the defendant's official duty." Court's Final Jury Instruction No. 15.

Furthermore, defendant Hurley testified that he completed the audit of Have a Heart on September 11th. Ex. 1, page 31, lines 21-25; page 32, lines 22-23; page 37, and lines 1-3. The evidence presented at trial, however, made clear that defendant Hurley had not completed the audit on September 11th. On September 11, 2015, defendant Hurley and Ryan Kunkel signed the Form 4549. Government's Trial Ex. 67. That form included

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the following language: "It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations."  Government's Trial Exh. 67, page 2 (Exh. 4).  More importantly, Government's Trial Exhibit 76 included the Activity Record defendant Hurley completed during the audit.  The Activity Record demonstrates that defendant Hurley took a number of affirmative steps to complete the audit *after* September 11th.  Defendant Hurley's September 14th entry into the Activity Record reflects that: (1) he held a management concurrence meeting and case management discussion with his supervisor; (2) the case would close by 9/18; and (3) he started updating workpapers.  Defendant Hurley's September 15th entry reflects additional work he performed on the audit, including, among other things: (1) completing remaining workpapers and printing the case to file; and (2) submitting the case file to his manager for closure.  Thus, it is clear that Hurley's audit was not complete on September 11th, contrary to his testimony.

Defendant Hurley also testified that the $20,000 he received from Ryan Kunkel was not in exchange for any official action on the audit, but connected to his future employment by Mr. Kunkel.  *See generally*, Exh. 1, pages 36, lines 4-25, page 37, line 1-24; page 38, lines 3-5; page 44, line 4-5; page 54, lines 6-10.  This evidence is directly contradicted by the jury verdict for Counts 2 and 3.  To convict the defendant, the jury found beyond a reasonable doubt that "the defendant received something of value [the $20,000 payment], in return for being influenced in the performance of an official act or being persuaded to do or not to do an act in violation of defendant's official duty."  Court's Final Jury Instruction No. 15.

The information discussed above proves conclusively that defendant Hurley perjured himself at trial.  Therefore, the United States respectfully requests that the two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 be applied at sentencing.

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. The Jury's Bribery Convictions on Counts 2 and 3 Should Not be Treated Like Gratuity Convictions

The defense makes the argument that the jury's bribery convictions on Counts 2 and 3 should be treated as gratuity convictions because the jury found the defendant guilty of the lesser included gratuity offense for Count 1. This argument defies logic. Both the verdict form (Dkt. #66) and the polling of the jurors after the verdict show that the jury found the defendant guilty of the substantive two bribery counts. There is no basis in law or fact for concluding that the lesser included offense trumps the substantive offense.

### E. The Defendant is Not Entitled to a Reduction for Acceptance of Responsibility

The defense contends that Mr. Hurley should receive some credit for acceptance of responsibility because he resigned from the IRS and admitted to receiving a gratuity. This contention lacks merit because defendant Hurley never accepted responsibility for committing the crime of bribery. To the contrary, at trial, defendant Hurley presented a defense that the money he received was advance payment for future work he was to perform as the Chief Financial Officer for Mr. Kunkel's marijuana businesses. As illustrated above, defendant Hurley even took the stand and perjured himself repeatedly in a transparent attempt to minimize his misconduct. None of these actions are consistent with acceptance of responsibility.

### IV. THE 3553(A) FACTORS SUPPORT A SENTENCE OF 84 MONTHS

Taking into account the advisory sentencing guideline range and all of the sentencing factors under Title 18, United States Code, Section 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence, the United States respectfully requests that the Court sentence defendant Paul Hurley to 84-months

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

imprisonment. While this sentence is significantly below the advisory sentencing guidelines range as determined by the Probation Office, the United States believes it is sufficient, but not greater than necessary, to meet the goals of sentencing.

A.  **The Serious Nature and Circumstances of the Offense**

A sentence of 84-months incarceration reflects the serious nature and circumstances of the offense. Public corruption undermines the rule of law, the function of government, and the public's faith in these institutions. Defendant Hurley, as a public official of the United States, was given significant authority over the entities he audited, and the individuals who represented those entities. IRS revenue agents play an important role in the fair administration of the tax laws of the United States. They carry the heavy responsibility of ensuring that corporate entities and American citizens accurately report and pay their federal taxes. By the power vested in him by the United States, he had the authority to conduct taxpayer audits, including demanding records, conducting interviews, and assessing additional federal tax. Instead of using his power to apply the tax laws of the United States fairly and accurately during his audits, defendant Hurley abused his position and exposed the United States to a significant tax loss in exchange for $20,000 in cash.

The defendant's corrupt conduct in this case not only erodes the public's confidence in the fair administration of the tax laws by the IRS, it also weakens the public's trust in all areas of government. The American public entrusts a significant amount of power to public officials like Hurley. When that power is used corruptly to line the pockets of a public official, a tremendous breach of trust occurs.

B.  **The History and Characteristics of the Defendant**

A sentence of 84 months is supported by the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). When viewed as a whole, the aggravating factors in the defendant's background far outweigh the mitigating factors. The defendant has no criminal history, and he did face some challenges at home during his upbringing. But it

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

is also clear that -- by the time he joined the IRS -- he had overcome those challenges and had become rather successful. He first attended San Jose State University, and then moved on to Golden Gate University School of Law. After he graduated from law school, he attended the University of Washington School of Law and obtained his LLM in tax law. Defendant Hurley was admitted to the Washington State Bar on November 17, 2006. When he received his bribe, he was earning approximately $72,000 per year from the IRS. Thus, unlike a significant number of defendants the Court sentences each year, defendant Hurley was living a good life with stable employment and income.

Defendant Hurley's conduct must be viewed against this background. Despite all the privileges he enjoyed in his life, defendant Hurley made a deliberate decision to violate his oath of office and corruptly received a $20,000 bribe from a taxpayer in exchange for defrauding the United States out of approximately $1 million. The defendant added insult to injury by perjuring himself at trial. Perjury in any form is an affront to the rule of law. When an attorney – an officer of the court – engages in such conduct, however, it significantly erodes the public's confidence in the legal profession. It also demonstrates just how far defendant Hurley was willing to go to evade responsibility for his corrupt conduct.

**C. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

A sentence of 84 months is also needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). As noted above, public corruption is a very serious offense. The seriousness of this offense is greatly enhanced when, as here, the individual involved held a sensitive position and was a member of the legal profession. Where -- as here -- there is an egregious violation of the public's trust, a significant sentence in order to promote respect for the law. At its core, public corruption demonstrates a complete disregard for the rule of law and for the democratic ideals of self-government. The requested 84-

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 month sentence will promote respect for the law, provide just punishment for the offense, and send a strong message that public corruption is antithetical to the rule of law.

**D.     To Afford Deterrence**

An 84-month sentence is needed "to afford adequate deterrence to criminal conduct" of others.  18 U.S.C. § 3553(a)(2)(B).  A significant sentence is needed to deter other public employees, including IRS employees, from abusing the power vested in them by the United States in exchange for personal gain.  Every day, citizens of the United States rely upon thousands upon thousands of federal and state public employees – whose responsibilities extend to nearly every area of those citizens lives – to exercise their job responsibilities in a fair and just manner and free from undue influence.  A strong sentence in this case will put those public employees on notice that should they sell their position in exchange for money or other things of value, a lengthy prison sentence will follow.

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence defendant Hurley to a three-year term of imprisonment for Count 1 (Receiving an Illegal Gratuity By a Public Official) concurrent to a seven-year term of imprisonment for Counts 2 and 3, followed by a three-year term of supervised release.

Respectfully submitted,

ANNETTE L. HAYES.
United States Attorney

*/s/ Justin W. Arnold*
JUSTIN W. ARNOLD
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101
Telephone: (206) 553-5326 (Arnold)
Fax: (206) 553-0755
E-mail: Justin.Arnold@usdoj.gov

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Jenny Fingles*
JENNY FINGLES
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-0755
E-mail: jenny.fingles@usdoj.gov

United States' Sentencing Memorandum
U.S. v. Hurley (CR15-336JCC) - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970